**So Ordered.**

Frank L. Kurtz
Bankruptcy Judge

**Dated: March 25th, 2013**

Steven H. Sackmann, #00618
Sackmann Law Office
P. O. Box 409 - 455 E. Hemlock, #A
Othello, Washington 99344
(509) 488-5636 - phone
(509) 488-6126 - FAX

Attorney for Debtor(s)

HON. FRANK L. KURTZ
Chapter 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: ) | NO. 11-02217-FLK11 |
| ) | |
| WILLEM BRON and MARY TERESA ) | FINDINGS OF FACT AND |
| BRON, husband and wife, ) | CONCLUSIONS OF LAW |
| d/b/a BRON DAIRY, ) | REGARDING CONFIRMATION |
| ) | OF PLAN |
| Debtor(s). ) | |

THIS MATTER having come on regularly for hearing via telephone conference before the Honorable Frank L. Kurtz, Chief Bankruptcy Judge for the Eastern District of Washington, on the 14th day of March, 2013, and WILLEM BRON and MARY TERESA BRON, husband and wife, d/b/a BRON DAIRY, (hereinafter "Debtor" and/or "Bron") appearing by and through their attorney of record, STEVEN H. SACKMANN, and WILLEM BRON, being sworn and testifying as Debtor, and

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

having submitted testimony by Declaration and the Court having considered the Declaration and the testimony offered in support of confirmation of the Plan and deeming itself fully advised in the premises, now makes the following

## FINDINGS OF FACT:

A.  **Procedural Status.**  On September 14, 2012, Debtor filed its Plan of Reorganization and Disclosure Statement. Yakima County Treasurer, Lisa McMahon-Myhran on behalf of US Bank National Association, Jeff Simpson on behalf of AmericanWest Bank, and Daniel Radin on behalf of State of Washington filed Objections.

Debtor filed his First Amended Chapter 11 Plan of Reorganization and First Amended Chapter 11 Disclosure Statement on December 5, 2012.

On December 7, 2012, the Court entered an Order approving disclosure and setting confirmation with respect to Debtor's First Amended Chapter 11 Disclosure Statement and Debtor's First Amended Chapter 11 Plan of Reorganization.

Debtor, Internal Revenue Service, State of Washington by Daniel Radin, John Deere Credit by Josh Busey and AmericanWest Bank by Jeff Simpson have stipulated and agreed to amended provisions which should modify Debtor's First Amended Chapter 11 Plan of Reorganization.

The deadline for voting on the Plan was February 11, 2013. One Hundred Percent of all voting secured creditors and unsecured creditors voted in favor of Bron's First Amended Chapter 11 Plan of Reorganization and the Report of Balloting and Ballot Summary was filed on February 14, 2013.

The Court entered its Order granting application to approve employment of Steven H. Sackmann as attorney for the Debtor on May 31, 2011.

B.  Debtor's Plan of Reorganization meets the following requirements:

    a.  The Plan complies with the applicable provisions of Chapter 11;

    b.  Debtor has complied with the applicable provisions of Chapter 11;

    c.  The Plan has been proposed in good faith and not by any means forbidden by law;

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

      d.      The Plan provides for payment of all allowed administrative claims upon the Plan's effective date, or under such terms of payment agreed to by administrative claimants;

      e.      Payments to be made by the Debtor to its attorney and accountants for services, costs and expenses in connection with the case have been approved or will be submitted for approval by the Court after notice and hearing;

      f.      With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan, on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of this title on such date.

      g.      With respect to each class of claims or interests such class has accepted the plan.

      h.      Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan;

      i.      The proposed Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests.

Having heretofore made its Findings of Fact, the Court now enters the following:

## CONCLUSIONS OF LAW

1. Debtor's First Amended Chapter 11 Plan of Reorganization as amended by the Order Confirming Plan complies in all aspects with the applicable provisions of Chapter 11 of the Code, and specifically, 11 USC §1129.

2. The Debtor has complied with the applicable provisions of Title 11 USC.

3. The Plan was proposed in good faith, does not discriminate unfairly and is fair and equitable with respect to each class of claims.

4. Paragraph captioned "Class II: Department of Labor & Industries" is modified to read as follows:

### CLASS II: DEPARTMENT OF LABOR & INDUSTRIES

State of Washington Department of Labor & Industries filed its Proof of Claim on May 25, 2011, and Amended Proof of Claim on August 31, 2011, and is in the process of filing an additional amended and updated Proof of Claim.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

Debtors shall pay the State of Washington Department of Labor & Industries the unsecured priority indebtedness owed in the approximate sum of $11,116.70 together with interest as soon as cash surplus is available, but in not less than Thirty-eight (38) monthly payments of $360 per month including interest at Twelve Percent (12%) per annum commencing 30 days from "Date of Confirmation"

Taxes shall not be discharged until paid. In the event of default by the Debtor of any of the provisions of the Plan regarding payment of the tax claims of the State of Washington, after 15 days written notice of default and failure by the Debtor to cure, all deferred state tax liabilities shall be immediately due and payable, and the State may proceed against the assets of the reorganized Debtor using any state or federal remedies.

All taxes accruing each year throughout the term of this Plan shall be paid in full when due.

Unsecured indebtedness owed to the State of Washington Department of Labor & Industries in the approximate sum of $1,567.55 shall be paid as provided for in Class XIV below.

5. Paragraph captioned "Class IV: Internal Revenue Service" is modified to read as follows:

### CLASS IV: INTERNAL REVENUE SERVICE

Internal Revenue Service filed its Amended Proof of Claim on February 6, 2012.

Debtors shall pay the Internal Revenue Service all priority indebtedness owed believed to be the sum of $125,573.33 together with interest per IRC6621 as of "Date of Confirmation" (currently 3%) from "Date of Petition", as soon as cash funds are available but in not less than the number of equal monthly payments equivalent to the number of months remaining until May 2, 2016, i.e. 5 years from the "Date of Petition". Payments shall commence 30 days after "Date of Confirmation". The estimated payment assuming a "Confirmation Date" of December 1, 2012, including interest at 3% per annum is $3,651.82.

In addition, IRS may assess tax owed, interested accrued and penalties due by reason of non-receipt of Debtor's 2005 tax return. The tax, interest and penalties asserted by IRS and contested by Debtor is approximately $15,000. If such tax, interest and penalties are determined to be due, the tax, interest and penalties will be non-dischargeable and shall be added to the above priority taxes and paid in remaining monthly payments so that all taxes, interest and penalties will be fully paid on or before May 2, 2016.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

Any and all taxes which have accrued during administration of the estate and remain unpaid shall be calculated as of the "Date of Confirmation" and will be paid in Twelve (12) equal monthly payments commencing One month from the "Date of Confirmation" including any interest and/or penalties. Taxes owed will not be discharged until the Plan has been completed. Internal Revenue Service retains all right of set-off.

Debtors will file post-petition federal tax returns as they become due and shall make timely deposits of all payroll taxes. All tax returns, certification and copies of federal tax deposit receipts will be provided to the local Spokane office. Internal Revenue Service shall give written notice if Debtors are not current in plan payments or if Debtors have not paid post-confirmation tax liabilities and Debtor shall have 30 days to cure the default. If the default is not cured, Internal Revenue Service may resort to its normal, administrative collection remedies.

6. Paragraph captioned "Class VII: AmericanWest Bank" is modified to read as follows:

### CLASS VII: AMERICANWEST BANK

AmericanWest Bank filed its Proof of Claim on July 6, 2011.

#### 1. Description of Claim

The principal indebtedness owed to AmericanWest Bank (hereinafter referred to as "AmericanWest" and/or "Lender") is approximately $2,324,096.89 as of March 5, 2013, including accruing interest, late fees, attorney fees and advances which have been agreed to. The indebtedness is secured by:

| Collateral | Value | Lien Position |
| --- | --- | --- |
| 961 Milking Cows | $1,345,400 | 1st |
| 484 Heifers | $363,000 | 1st |
| Dairy and Two Residences | $3,444,000 | 1st |
| Beam Road Property | $225,000 | 1st |
| 5 Horses | $32,500 | 1st |
| Farm Equipment | $335,800 | 1st |
|  | $5,745,700 |  |

|  |  |  |
|---|---|---|
| JD Harvester and Pickup Head | $-0- | 2nd |
| Less Contract of $122,952 | | |
| Curfman Property | $336,602.57 | 2nd |
| Less Contract of $703,397.43 | | |
| Kleckner Property | $297,420.48 | 2nd |
| Less Contract of $27,579.52 | | |
| | $6,379,723.05 | |

2. **Treatment in Plan – Operating Loan**

Brons (hereinafter referred to as "Bron", "Debtor" and/or "Borrower") shall pay AmericanWest Bank the Operating Note with an unpaid balance of $609,837.75 as of March 5, 2013, including late fees, advances and attorney fees together with interest at variable rate set forth below calculated from March 5, 2013, in 72 equal monthly payments, in the sum of $9,405.46 commencing March 28, 2013, and continuing on the same date of each month thereafter until the entire balance of principal, interest, late fees, advances, attorney fees and costs are paid in full. Subject to any payment changes resulting from changes in the Index, Borrowers will pay this operating loan in 72 payments of $9,405.46 each payment. Borrowers' first payment is due March 28, 2013, and all subsequent payments are due on the 28th day of each month thereafter. Borrowers' final payment will be due 72 months after March 28, 2013, and will be for all principal, accrued interest, late fees, advances and attorney fees and costs not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments shall be applied first to accrued interest, then to principal, then to any unpaid collection costs (including attorney fees, costs and expenses), then to any unpaid advances, and then to any unpaid late charges. Interest on this loan is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

Borrowers will pay Lender at Lender's address of 110 S. Ferrall, Spokane, Washington, 99202, or at such other place as Lender designates in writing.

The operating loan or, as it is commonly referred to as the "cow loan", had an original indebtedness of 1.6 Million Dollars. The interest rate on the cow loan is subject to change from time to time based on changes in an independent index which is the One Year Fixed Advance Rate of the Federal Home Loan Bank of Seattle As Posted each Monday (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying borrowers. Lender will tell Borrowers the current Index

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

11-02217-FLK11    Doc 273    Filed 03/25/13    Entered 03/26/13 10:40:26    Pg 6 of 14

rate upon Borrowers' request. The interest rate charge will not occur more often than 12 months. Borrowers understand that Lender may make loans based upon other rates as well. The Index was, as of September 26, 2012, at 0.56 percent per annum. The interest rate to be applied to the unpaid principal balance during this loan will be at the rate of 2.950 percentage points over the Index resulting in the current rate of 3.51 percent per annum. The next scheduled adjustment of the interest rate is scheduled for September 26, 2013, and annually thereafter.

**NOTICE:** under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) Increase Borrowers' payment to insure Borrowers' loan will payoff by original final maturity date, (B) Increase Borrowers' payments to cover accrued interest, (C) Increase the number of Borrowers' payments, and/or continue Borrowers' payments at the same amount and increase Borrowers' final payment. All of the terms of the original Promissory Note as modified by the subsequent Change in Terms Agreements shall remain in full force and effect.

"All of the documents (including, but not limited to, the forbearance agreements, the promissory note, change in terms agreements, financing statements, milk proceeds assignment, and other documents, (all of which were executed by the Brons in favor of AmericanWest Bank) relating to the operating loan or "cow loan" shall remain in full force and effect and are not modified by this bankruptcy proceeding, except as to the payment terms of the promissory note which are modified as stated above. The obligations and indebtedness memorialized by those documents, including the promissory note and change in terms agreements, are not subject to any claims, offsets, defenses, counterclaims or otherwise."

The entire balance of principal and interest collection costs, attorney fees, advances, and late fees may be paid in full at any time without penalty. All defaults under the security documents existing as of the "Date of Confirmation" of the Plan shall be deemed to have been cured or waived on the "Confirmation Date." Any notice of default or acceleration declaring the indebtedness due under the security documents shall, effective as of the "Confirmation Date," be deemed canceled, rescinded and have no further force or effect. AmericanWest Bank shall subordinate its lien in cattle and milk proceeds to a new lender upon condition that the Operating Note is paid in full and all proceeds of the new financing remains in the business to finance the purchase of cattle or retire debt. Subject to the provisions contained in Paragraph 6 below, AmericanWest Bank shall release its security interest in individual Milking Cows and/or Heifers, bull calves and farm equipment to accommodate sale, replacement or

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7

trade of the collateral so long as Brons are current on payments due and are not otherwise in default under the terms of this plan.

### 3. Treatment in Plan – Real Estate

Brons shall pay AmericanWest Bank the amount of its remaining indebtedness owed on the real estate loan in the sum of $1,714,259.14 as of March 5, 2013, including accrued interest, collection costs, late fees, advances and attorney fees, costs and expenses in equal monthly payments amortized 20 years including interest at 6% per annum calculated from March 5, 2013, in 179 equal monthly payments in the sum of $12,281.48 commencing March 28, 2013, and continuing on the same date of each month thereafter with a final balloon payment of all remaining unpaid interest, unpaid principal, unpaid collection costs, unpaid late fees, unpaid advances, and unpaid attorney fees, costs and expenses due 180 months after March 28, 2013.

"All of the documents (including, but not limited to, the forbearance agreements, the promissory note, change in terms agreements, financing statements, milk proceeds assignment, and other documents, (all of which were executed by the Brons in favor of AmericanWest Bank) relating to the real estate loan shall remain in full force and effect and are not modified by this bankruptcy proceeding, except as to the payment terms of the promissory note which are modified as stated above. The obligations and indebtedness memorialized by those documents, including the promissory note and change in terms agreements, are not subject to any claims, offsets, defenses, counterclaims or otherwise."

The entire balance of principal, interest, collection costs, attorney fees, costs and expenses, advances, and late fees may be paid in full at any time without penalty. Repayment shall be secured by the existing Real Estate Mortgages executed between Brons and AmericanWest Bank and by the security interests in livestock, equipment and milk together with milk assignment. All defaults under the Real Estate Mortgages and security agreements existing as of the "Date of Confirmation" of the Plan shall be deemed to have been cured or waived on the "Confirmation Date." Any notice of default or acceleration declaring the indebtedness due under the Real Estate Mortgage shall, effective as of the "Confirmation Date," be deemed canceled, rescinded and have no further force or effect.

AmericanWest Bank is fully secured by the livestock, equipment, milk proceeds and real estate described above.

### 4. Cash Flow Budgets

The Debtors shall prepare and deliver to AmericanWest Bank annual budgets (sometimes hereafter referred to as "Budget") in January of each year detailing all of the Debtors' projected revenue and

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

expense for the forth coming year associated with the Debtors' operation of all of the property owned by the Debtors and operation of the Dairy. Each budget shall be balanced. The budgets expenses category shall be based upon actual cash expended without regard to what portion is deductible as a current expense versus principal deduction or otherwise.

### 5. Additional Reporting Requirements

Until Debtor repays all indebtedness owing to AmericanWest Bank, then Debtor shall:

5.1 Provide AmericanWest Bank monthly livestock inventory reports, feed-on-hand reports, and milk production reports. These monthly reports shall be due and received by AmericanWest Bank on or before the 25th day of the month following the month being reported. The first of these reports are due 30 days after Plan Confirmation, and shall continue each month thereafter. These reports shall be in the form and shall contain the categories and information for the categories as stated in the Position Report customarily utilized by Debtor and AmericanWest Bank.

5.2 Provide AmericanWest Bank with an internally prepared monthly financial statement, including a balance sheet and list of payables. The monthly financial statement, including balance sheet and list of payables, shall be due and received by AmericanWest Bank on or before the 25th day of the month following the month for which such reports are due. The first of such reports are due 30 days after Plan Confirmation, and shall continue each month thereafter.

5.2.1 Debtors agree that all of the reporting it is required to provide AmericanWest Bank is subject to audit at the discretion of AmericanWest Bank and with 7 days notice to Debtors. Debtors specifically agree that AmericanWest Bank or its agent or designee is granted an irrevocable right to enter the Debtors' real property or any other location where the livestock or any of it is then located to physically count the number of livestock and inspect the livestock. Debtors further agree to provide supporting documentation to Lender, its agents or designee upon request to support and document all payables and payments on account. Debtors further agree to supply upon request to AmericanWest Bank or its agent or designee all supporting documentation on accounts and account receivables. Debtors further agree to provide supporting documentation to AmericanWest Bank, its agent or designee upon request of all cash and proceeds received and supporting documentation for all expenditures incurred, as well as those paid. Notwithstanding any of the foregoing in this Paragraph, in the event AmericanWest Bank deems itself insecure, AmericanWest Bank or its agent or designee may conduct the above inspections without any notice to Debtors.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9

5.3 Deliver to AmericanWest Bank the reports as stated above. Debtors hereby represent and warrant that the projected revenues expended specified in the budget constitute Debtors best estimate of the revenues that will be generated by Debtors' dairy operations during the period of time covered by the budget and the expenses that will be reasonably and necessarily incurred by the Debtors in connection with Debtors dairy operation during the period of time covered by the budget.

5.4 Within 14 days of completion of year-end financial statements deliver to AmericanWest Bank a true and correct copy of their certified public accountant prepared year-end financial statements.

5.5 Deliver to AmericanWest Bank a true, correct and complete copy of their federal income tax returns together with all schedules within 14 days of the completion of each of the tax returns. Tax returns must be timely filed pursuant to the applicable United States Code and Rules and, in any event, no later than October 15 for any given year.

5.5.1 Debtors shall monthly provide to AmericanWest Bank the total amount of feed delivered from any source, for the previous month and shall provide documentation of the actual cost of the feed delivered in the prior month by the 30th day of the following month. In the event any feed is purchased by the Debtors from any source, but not delivered that item shall be provided as well with respect to amount and actual cost and when the expected delivery date is. The actual delivery date of the feed shall be noted in that month's reporting requirements.

5.6 Provide to AmericanWest Bank a true and correct copy of the monthly Darigold (Northwest Dairy Association) Settlement Statements each month within 7 days from date of receipt of the settlement statements by the Debtors. Alternatively, to comply with this condition, the Debtors may cause Darigold (Northwest Dairy Association) to deliver via US mail or email a true and correct copy or image of the monthly settlement statement at the same time it provides it, sends it, or delivers it to the Debtors.

5.7 Provide such other information respecting the business, operations and financial condition of the Debtors as AmericanWest Bank may reasonably request from time-to-time.

5.8 Maintain all material licenses, permits, and all related or other agreements necessary for the Debtors to operate their business, as the same may now exist or be modified or expanded.

5.9 Comply at all times with any and all material regulations, rules and requirements of any federal agency or

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 10

department and of any state, local or municipal government agency or department that may have jurisdiction or power to regulate, license or grant permits with respect to the facilities or activities of Debtors, whether such regulations, rules, or requirements presently exist or are modified, promulgated, or implemented after the date of this Order.

       5.9.1  Maintain all material licenses, permits, and all related or other agreements necessary for the Debtors to operate their business, as the same may now exist or be modified or expanded.

       5.9.2  Comply at all times with any and all material regulations, rules and requirements of any federal agency or department and of any state, local or municipal government agency or department that may have jurisdiction or power to regulate, license or grant permits with respect to the facilities or activities of Debtors, whether such regulations, rules, or requirements presently exist or are modified, promulgated, or implemented after the date of this Order.

       5.9.3  Keep Debtors' real and personal property in good state of repair and good working order and condition, in a manner consistent with prudent agricultural practices in the area.

       5.9.4  Not commit or allow the commission of any waste on the Debtors' property.

       5.9.5  The Debtors shall pay and discharge taxes pursuant to Plan provisions and all lawful claims arising after the petition date for real estate or other taxes, labor, materials, rentals, or other expenses, that might or could, if unpaid, become a lien or charge upon Debtors' property.

       5.9.6  Timely pay all of Debtors' employees, in accordance with their agreements with such employees and all applicable law and pay all payroll taxes and other taxes imposed upon Debtors with respect to their employees or otherwise that accrue after the petition date.

       5.9.7  Keep and maintain their properties and each portion thereof in compliance with, and shall not cause or permit their properties or any portion thereof to be in violation of any laws relating to hazardous waste or hazardous materials.

       5.9.8  The Debtors shall pay all post-confirmation creditors, including trade creditors, in full when the creditors' account payables are due in the ordinary course of business.

    6.    **Cattle Sales and Purchases**

The Debtors' may sell and replace livestock (cattle) only in the ordinary course of business provided the total cattle numbers are

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

maintained at 950 head, excluding leased cows, and further provided at least 850 of the livestock (cattle) are milking cows.

Debtors shall provide written reports to AmericanWest Bank accounting for any number of replacement cows purchased, including the seller (or originator) the price, and a written accounting of any and all cattle that have been culled, sold, died or otherwise disposed of on or before the 25th day of each month for the prior month.

7. **Health Insurance Premiums**

Darigold (Northwest Dairy Association) is authorized to deduct from the milk money the sum of $1,300 per month and pay that sum for the Debtors' health insurance premiums.

8. **Direct Payments**

Darigold (Northwest Dairy Association) shall pay and tender to George DeRuyter and Sons Dairy the sum of $8,500 each month from the Debtors' milk proceeds until the amount owing to George DeRuyter and Sons Dairy is paid in full.

Darigold (Northwest Dairy Association) shall pay to Curfman the sum of $6,000 each month to be applied to the Real Estate Contracted dated January 8, 2002, between Troy Curfman and Kathleen Curfman, as Seller and Willem Bron and Mary Teresa Bron as Purchasers, recorded January 14, 2002, in the records of Yakima County, Washington, under Auditor's File Number 7252340, until it is paid in full.

9. **Reasonable Access and Inspection**

Debtors shall provide AmericanWest Bank reasonable access to their real property and improvements to examine the dairy farm operations and examine all of the Debtors' assets and AmericanWest Bank collateral.

10. **Events of Default**

The happening of any of the following events or conditions will constitute an event of default.

10.1 Failure to Perform: Failure by Debtors to perform any obligation, agreement, covenant and/or condition contained in these plan provisions or the loan documents, which do not conflict with these plan provisions.

10.2 Falsity: The falsity when made or furnished of any warranty, representation or other statement or report made or furnished to AmericanWest Bank by Debtors, or either of them.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12

10.3   Improper Use of Funds: If Debtors, or either of them, uses any funds received for any purpose not provided in this Plan.

**11.    Validity and Continuing Perfection of Security Interest and Liens**

The Confirmation of this Plan shall be sufficient and conclusive evidence of the existence, validity, perfection and priority of AmericanWest Bank's security interests, real estate mortgages, assignments of rent, and lien claims against the collateral as described in those documents, without the necessity of filing or recording any financing statement or other instrument or document which may be otherwise required under the law of any jurisdiction or the taking of any other action to validate or perfect the secured interests, real estate mortgages, assignments of rent, lien claims or other interests of AmericanWest Bank in and to the collateral described in the documents, or to otherwise entitle AmericanWest Bank the position priorities granted by and in the above-described documents; PROVIDED, HOWEVER, at the sole discretion of AmericanWest Bank, the Debtors shall execute and deliver to AmericanWest Bank and AmericanWest Bank may file and record such security agreements, financing statements, real estate mortgages, assignments of rent, or other instruments, but is not required to, and PROVIDED, FURTHER that after the confirmation of this Plan, AmericanWest Bank shall be required to file and/or record any continuation statements required to continue perfection of its security interests.

**12.    Performance Standards**

If the Debtor's dairy operation loses more money than stated in the budget for any year and if Debtor is in default of his payments to AmericanWest Bank then AmericanWest Bank shall be entitled to declare the loan(s) in default.

**13.    Remedy**

In the event any of the defaults occur, then AmericanWest Bank may declare a default and enforce remedies provided for in the loan documents.

7.   Paragraph captioned "Class IX:   John Deere Credit / Deere & Company" is modified to read as follows:

**CLASS IX: JOHN DEERE CREDIT / DEERE & COMPANY**

John Deere / Deere & Company filed its Proof of Claim on May 26, 2011.

### 1. Description of Claim

The indebtedness owed to John Deere / Deere & Company is the approximate sum of $125,100 plus interest, attorney fees and costs to "Date of Confirmation." This indebtedness is secured by a purchase money security interest in the JD 7300 Forage Harvester and JD 640C Pickup Head.

### 2. Treatment in Plan

Brons shall pay John Deere / Deere & Company the value of its Secured Claim in the approximate sum of $125,100, attorney fees and costs plus interest at the contract rate of 2.9% in monthly payments of $2,134.16 per contract commencing 30 days from "Date of Confirmation" and continuing monthly thereafter until the entire balance of principal and interest is paid in full.

The entire balance of principal and interest may be paid in full at any time without penalty. Repayment shall be secured by the existing Security Agreement executed between Brons and John Deere / Deere & Company. All defaults under the security documents existing as of the "Date of Confirmation" of the Plan shall be deemed to have been cured or waived on the "Confirmation Date." Any notice of default or acceleration declaring the indebtedness due under the security documents shall, effective as of the "Confirmation Date," be deemed canceled, rescinded and have no further force or effect. John Deere / Deere & Company shall release its security interest in the equipment collateral when the principal sum of $125,100, attorney fees and costs plus interest is paid in full.

### 3. Fully Secured

John Deere / Deere & Company is a fully secured creditor.

8. Debtor's First Amended Chapter 11 Plan of Reorganization should be confirmed.

///End of Order///

Presented by:

/s/ Steven H. Sackmann
STEVEN H. SACKMANN, #00618
Attorney for Debtors

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 14